| | |
|---|---|
| KAZEE, INC. § | |
| § | |
| v. § | |
| § | |
| DR. DAVID L. CALLENDER, in his § | |
| official capacity as President of the § | CIVIL ACTION NO. 4:19-CV-31-SDJ |
| University of Texas Medical Branch, § | |
| and TODD LEACH, in his official § | |
| capacity as Chief Information Officer of § | |
| the University of Texas Medical Branch § | |

**MEMORANDUM OPINION & ORDER ADOPTING THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS OF MAGISTRATE'S REPORT AND RECOMMENDATION**

Before the Court is Defendants Dr. David L. Callender and Todd Leach's Motion to Dismiss. (Dkt. #10). The Magistrate Judge entered a report and recommendation that the motion be denied. (Dkt. #37). The Defendants filed objections, (Dkt. #38), to which KaZee responded in support, (Dkt. #39). The Court, having conducted a *de novo* review of the motion and the record, adopts the factual findings and legal conclusions of the report under the reasoning set forth herein.

### I. FACTUAL & PROCEDURAL BACKGROUND

KaZee, Inc., provides information-technology products and services to the healthcare industry, including its "PEARL" system, an electronic medical records software program. KaZee agreed to license PEARL to the University of Texas Medical Branch at Galveston ("UTMB") for use at member sites within its Correctional Managed Health Care Program ("CMHCP"). The parties entered into a "Master License" agreement (the "Agreement") that set out, among other

things, the type of license, scope of use allowed under the license, and methods of terminating the license.[1]

After implementing PEARL at the agreed-upon CMHCP sites, KaZee became aware of alleged use of PEARL at other sites not within the CMHCP. In response to KaZee's inquiry about such use, UTMB acknowledged that its legal department initially agreed that the "current license can only be used for [the] UTMB/TDCJ/TT project [at the CMHCP sites] unless there is another agreement in place" and provided a list of sites that had used PEARL. KaZee asserted that UTMB's use of PEARL at certain sites was unauthorized, that such use constituted a material breach of the Agreement, and that the breach could be cured by paying $20 million in licensing fees.

KaZee negotiated with UTMB to resolve the dispute while allowing UTMB to continue using PEARL for several years. Unable to come to an agreement, KaZee filed suit against UTMB for breach of contract under state law and copyright infringement under 17 U.S.C. § 501.[2] In a motion to dismiss, UTMB asserted sovereign immunity against both claims and failure to exhaust administrative remedies in the State Office of Administrative Hearings ("SOAH") as to the breach of contract claim. Shortly thereafter, the parties entered into a Tolling Agreement dismissing the lawsuit without prejudice and tolling KaZee's claims until 30 days after the completion of administrative proceedings in SOAH.

Without filing a notice of claim in SOAH, KaZee resumed its efforts to negotiate payment for the allegedly unauthorized use of PEARL. When negotiations between KaZee and UTMB

---

[1] UTMB entered into the Agreement with Medical Information Management Systems, Inc. ("MIMS"). UTMB later entered into a Maintenance Agreement and a Source Code Agreement with Business Computer Applications, Inc. ("BCA"). KaZee is the successor-in-interest of both MIMS and BCA.

[2] *KaZee, Inc. v. University of Texas Medical Branch at Galveston*, Civil Action No. 4:18-CV-53 (E.D. Tex. Jan. 19, 2018).

failed again, KaZee sent UTMB a letter asserting that UTMB's unauthorized use of PEARL constituted a material breach of the Agreement. The letter further stated that, unless UTMB paid KaZee $20 million within 60 days for licensing fees allegedly owed to KaZee as a result of UTMB's unauthorized use of PEARL, the Agreement would be terminated. UTMB responded by contesting KaZee's assertion of a breach by unauthorized use, rejecting KaZee's related contention that it was owed licensing fees, and arguing that any claims KaZee might assert arising under the Agreement must be filed with SOAH rather than in federal court pursuant to the Agreement and the Tolling Agreement.

After 60 days passed without payment of the demanded licensing fees, KaZee filed this suit against Dr. David L. Callender, in his official capacity as President of UTMB, and Todd Leach, in his official capacity as Chief Information Officer of UTMB. KaZee asserts a copyright-infringement claim under 17 U.S.C. § 501, and a misappropriation-of-trade-secrets claim in violation of 18 U.S.C. § 1836 (the Defend Trade Secrets Act ("DTSA")). KaZee seeks preliminary and permanent injunctive relief against UTMB's ongoing use of PEARL. Defendants answered with a motion to dismiss, invoking sovereign immunity and challenging both this Court's subject-matter jurisdiction and the claims' sufficiency. The Magistrate Judge issued a report and recommendation counseling denial of the Defendants' motion, to which Defendants objected and KaZee replied in support.

## II. DEFENDANTS' RULE 12(b)(1) MOTION

KaZee asserts that UTMB's ongoing use of PEARL constitutes copyright infringement and misappropriation of trade secrets and warrants preliminary and permanent injunctive relief. Defendants contest the claims and the relief sought, in part, through a Rule 12(b)(1) motion to dismiss, in which Defendants present three arguments. First, Defendants urge the Court to dismiss

KaZee's claims for lack of subject-matter jurisdiction because the facts alleged constitute breach of contract under state law rather than federal copyright infringement or federal misappropriation of trade secrets. Second, Defendants maintain that KaZee's claims should be dismissed under the forum non conveniens doctrine because the claims arise under the Agreement and thus must be brought before SOAH pursuant to the dispute-resolution provision therein. And, third, irrespective of how they are characterized, Defendants assert that KaZee's claims are barred because Defendants are entitled to sovereign immunity.

Defendants' Rule 12(b)(1) arguments fail. KaZee asserts federal claims over which this Court has subject-matter jurisdiction. Thus, there is no basis to dismiss the claims to allow filing in SOAH. And the claims may proceed against the Defendants under the *Ex parte Young* exception to sovereign immunity. Defendants' Rule 12(b)(1) motion is DENIED.

**A. Rule 12(b)(1) Legal Standards**

Article III of the Constitution requires a federal court to establish its subject-matter jurisdiction before exercising the judicial power of the United States. U.S. CONST. art. III ("The judicial Power shall extend to all Cases . . . [and] to Controversies."); *see also, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed. 2d 760 (1999). This limit on a court's power is so essential to maintaining constitutional and statutory boundaries that it "must be policed by the courts on their own initiative even at the highest level." *Ruhrgas*, 526 U.S. at 583.

Federal Rule of Civil Procedure 12(b)(1) provides a procedural vehicle to challenge a court's subject-matter jurisdiction over a pending suit. A court should consider a jurisdictional attack under Rule 12(b)(1) before any attack on the merits to avoid premature dismissal with prejudice. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). When doing

so, a court may consider the complaint, undisputed facts in the record, and disputed facts resolved by the court. *Id.* The moving party carries the burden of proving that the plaintiff "cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.*

**B. Subject-Matter Jurisdiction**

KaZee asserts that the Court has subject-matter jurisdiction over the claims at issue because its copyright-infringement claim under 17 U.S.C. § 501, and its misappropriation-of-trade-secrets claim under 18 U.S.C. § 1836, both invoke federal-question jurisdiction.[3] Defendants argue that KaZee's claims arise under the Agreement, sound in state law, and cannot support federal-question jurisdiction.

**1. Copyright infringement**

A federal district court has subject-matter jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Relevant here, a district court has exclusive jurisdiction over actions arising under the Copyright Act. *Id.* § 1338(a); *Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987). An action arises under the Copyright Act "if and only if":

    (1) the complaint seeks a remedy expressly granted by the Act;

    (2) the complaint asserts a claim requiring construction of the Act; or

    (3) the complaint presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim.

*Goodman*, 815 F.2d at 1031 (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 824 (2d Cir. 1964) [hereinafter "*T.B. Harms* test"]).

---

[3] KaZee does not rely upon diversity jurisdiction, nor could it. Defendants are citizens of Texas, and KaZee has its primary place of business in Texas.

The *T.B. Harms* test guides a court's determination of jurisdiction "for claims of infringement arising from, or in the context of, an alleged contractual breach[.]" *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 355 (2d Cir. 2000). The test "focuse[s] on whether and how a complaint implicates the Copyright Act." *Id.* at 348. Simply put, "[w]hen a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked." *Id.* at 355. Although it is "well-established" that not all actions with complaints referring to the Copyright Act arise under the Act, *id.* at 347 (citing *T.B. Harms*, 339 F.2d at 824), copyright infringement claims do "characteristically arise where the defendant held a license to exploit the plaintiff's copyright, but is alleged to have forfeited the license by breaching the terms of the licensing contract and thus to infringe in any further exploitation." *Id.*

Applying the *T.B. Harms* test to this action, it is clear that KaZee's copyright-infringement claim arises under the Copyright Act. The complaint alleges an ongoing violation of the Act and seeks a remedy expressly granted by the Act—an injunction against further allegedly infringing use of PEARL. *See* 17 U.S.C. § 502(a) (authorizing a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"). "Because the complaint alleges the defendants violated the Copyright Act and seeks the injunctive remedy provided by the Act, under the rule of *T.B. Harms*, the action falls within the jurisdictional grant of Section 1338." *Bassett*, 204 F.3d at 355–56; *accord* 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.01[A][1][a] (2019) [hereinafter NIMMER] ("[N]otwithstanding the existence of a contractual relationship between the parties, if the defendant's conduct is alleged to be without authority under such contract and further to constitute an act of statutory copyright infringement, then federal jurisdiction will be invoked."); *see also id.* ("The prototypical case invoking federal jurisdiction is an action for infringement of a

statutory copyright."). Therefore, this Court has subject-matter jurisdiction over the copyright-infringement claim.[4]

Defendants' contrary arguments are unavailing. Defendants contend that the copyright-infringement claim may not proceed until the Court first adjudicates whether UTMB previously breached the Agreement and, if so, whether that breach entitled KaZee to unilaterally terminate the Agreement. This argument turns on a misunderstanding of the governing law. As discussed, the *T.B. Harms* test governs the issue of whether a claim "arises under" the Copyright Act. *See Bassett*, 204 F.3d at 347. The Fifth Circuit has adopted that test, *see Goodman*, 815 F.2d at 1031, and courts have repeatedly applied it, *see supra* note 4. Under the *T.B. Harms* test, the adjudication of some underlying contract issues does not preclude federal jurisdiction. *See Bassett*, 204 F.3d at 350 n.4 ("As only a federal court can adjudicate a claim of infringement and award copyright remedies, to deny jurisdiction because the defendant will contest only contract issues is essentially to deny plaintiff's claim."); NIMMER, § 12.01[A][1][a] ("Because the federal courts have exclusive jurisdiction to determine statutory infringement, they . . . may likewise pass on

---

[4] Courts within this circuit and beyond have adopted the *T.B. Harms* test and applied it accordingly. *See, e.g.*, *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002) (adopting the *T.B. Harms* test and acknowledging its reaffirmance in *Bassett*); *Bassett*, 204 F.3d at 350 n.4 (noting that the *T.B. Harms* test "require[s] federal courts to accept all cases in which the complaint seeks a remedy provided by the Copyright Act"); *DEA Specialties Co. v. DeLeon*, No. 5:14-CV-634, 2014 WL 4385967, at *3 (W.D. Tex. Sept. 4, 2014) ("[Plaintiff's] allegations are sufficient to allege a claim arising under the Copyright Act. [Plaintiff] asserts a claim directly under the Copyright Act for copyright infringement and seeks a declaration of willful infringement, an injunction against continued copying and use, damages pursuant to 17 U.S.C. § 504, and attorney's fees under the Copyright Act."); *Daniel Wilson Prods., Inc. v. Time-Life Films, Inc.*, 736 F. Supp. 40, 43 (S.D.N.Y. 1990) ("Where a complaint alleges a federally conferred right, such as a copyright, a trademark or a patent, then alleges violations of that right and requests remedies provided by federal statute, this should be enough to confer federal jurisdiction. The fact that such a claim arises in the context of a disruption of contractual arrangements and presents certain contract issues should not remove it from that jurisdiction."); *cf. T.B. Harms*, 339 F.2d at 824 (dismissing an action for lack of subject-matter jurisdiction where no claim of copyright infringement was asserted and no relief provided by the Copyright Act was sought); *Butler v. Cont'l Airlines, Inc.*, No. 4:01-CV-2194, 2001 WL 1509545, at *4 (S.D. Tex. Nov. 19, 2001) (same).

other questions of contract law."); *see also Stross v. Redfin Corp.*, 730 F. App'x 198, 202–03 (5th Cir. 2018) (per curiam) ("This is a copyright case, not a contracts case. The right to bring a copyright infringement claim comes from federal copyright law . . . [and] does not depend on state contract law. . . . The two claims are distinct.").[5]

KaZee asserts a claim for copyright infringement and requests remedies expressly granted by the Copyright Act, including injunctive relief. Under the controlling *T.B. Harms* test, this Court has subject-matter jurisdiction over that claim.

**2. Federal misappropriation of trade secrets**

Relying upon the same arguments asserted as to KaZee's copyright-infringement claim, Defendants assert that the Court lacks subject-matter jurisdiction over KaZee's misappropriation-of-trade-secrets claim. Defendants' argument is similarly unavailing.

Under the "well-pleaded complaint" rule, a suit arises under federal law when a complaint shows that the cause of action is based on federal law. *Vaden v. Discover Bank*, 556 U.S. 49, 60, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). Here, KaZee brings a misappropriation-of-trade-secrets claim under the DTSA. S. 1890, 114th Cong. § 2 (2016) (codified as 18 U.S.C. § 1831, *et*

---

[5] Defendants' contrary view is premised on the now-rejected *Schoenberg* test. In *Schoenberg*, the Second Circuit replaced the *T.B. Harms* test with a three-stage analysis of whether the infringement claim is merely "incidental" to a contract claim, or instead involves a breach of a condition or covenant of a contract licensing or assigning a copyright that is sufficient for the claim to arise under the Copyright Act. *Schoenberg v. Shapolsky Publishers*, 971 F.2d 926, 932–33 (2nd Cir. 1992) (internal citations omitted). The *Schoenberg* test was later rejected by the Second Circuit itself in *Bassett*, *see generally* 204 F.3d 343, and has not been accepted by circuits across the country that have adopted and continue to use the *T.B. Harms* test, *see id*. at 350 (collecting cases). *See also Hartman v. Bago Luma Collections, Inc.*, Civil Action No. 5:03-cv-00465, 2004 WL 377523, at *2–4 (W.D. Tex. Feb. 12, 2004), *report and recommendation adopted*, No. 5:03-CV-465 (W.D. Tex. Mar. 9, 2004) (Dkt. #60) ("In the instant case, defendant[s] clearly predicate[] [their] motion to dismiss on the outdated *Schoenberg* test, urging that the essence of plaintiff's complaint is a contract dispute.")

*seq.*). The DTSA establishes a private cause of action for misappropriation of trade secrets, *see* 18 U.S.C. § 1836, and provides that "[t]he district courts of the United States shall have original jurisdiction of civil actions brought under this section," *id.* § 1836(c). Because KaZee brings an action under this section, the Court has subject-matter jurisdiction over the claim. *See, e.g.*, *PHAZR, Inc. v. Ramakrishna*, No. 3:19-CV-1188, 2019 WL 5578578, at *1 (N.D. Tex. Oct. 28, 2019) ("In a case that is before this Court under federal question jurisdiction, [plaintiff's] Trade Secrets Act claim is the only federal cause of action."); *SPBS, Inc. v. Mobley*, No. 4:18-CV-391, 2018 WL 4185522, at *11 n.5 (E.D. Tex. Aug. 31, 2018) ("[T]he Court has federal question jurisdiction based on [the plaintiff's] DTSA claim.").

**C. Forum Non Conveniens**

Defendants insist that KaZee's claims "arise under" the Agreement. For that reason, Defendants urge the Court to dismiss the claims pursuant to the doctrine of forum non conveniens in accordance with the language of the Agreement mandating that claims "arising under" it be resolved through the dispute-resolution process set forth in Texas Government Code section 2260, *et seq.* Because the claims do not arise under the Agreement, as explained herein, the Defendants' request lacks merit and is denied.

**D. Sovereign Immunity**

Defendants also maintain that all of KaZee's claims are barred because Defendants are entitled to sovereign immunity. Although Defendants enjoy sovereign immunity, that immunity is subject to the *Ex parte Young* exception in this case. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

It is well-established that the Eleventh Amendment immunizes nonconsenting states from suit by individuals in federal court. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 748, 119 S.Ct. 2240,

144 L.Ed.2d 636 (1999); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004). Because states must act through their officials, they too are entitled to such immunity when acting in their official capacity. *McCarthy*, 381 F.3d at 414 (stating that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and the state itself). Defendants are state officials that have been sued in their official capacities. Thus, Defendants are entitled to immunity. *See, e.g.*, *Nelson v. Univ. of Tex. at Dall.*, 491 F. Supp. 2d 672, 676 (N.D. Tex. 2007) (finding immunity for similar University of Texas at Dallas officials).

Defendants' immunity, however, is subject to an exception under *Ex parte Young*. 209 U.S. at 123. *Ex parte Young* "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). *Ex parte Young* applies to "a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (internal quotation marks omitted). When determining whether *Ex parte Young* applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255, 131 S.Ct. 1632, 179 L.Ed.2d 675 (2011) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (citations and internal quotation marks omitted)).

KaZee's complaint satisfies that inquiry. KaZee is suing state officials in their official capacity, alleging ongoing violations of federal law. Specifically, KaZee alleges that Defendants "continue to infringe on KaZee's copyrighted work by improperly using PEARL and refusing to

return or destroy KaZee's intellectual property," (Dkt. #1 at 11), and that Defendants "continue to misappropriate KaZee's trade secrets by improperly using PEARL and refusing to return or destroy KaZee's intellectual property," *id.* KaZee requests only injunctive relief to halt these alleged ongoing violations of federal law. KaZee therefore meets the *Ex parte Young* exception, and its claims may proceed against Defendants.

The Court is mindful of the need for caution in applying *Ex parte Young* to maintain "the balance of fidelity to federal law with respect for states as sovereign entities," *Nelson*, 491 F. Supp. 2d at 676, and to avoid upsetting "the central role autonomous States play in our federal system," *Va. Office*, 563 U.S. at 255. But "no such encroachment is occasioned by straightforwardly applying *Ex parte Young* to allow this suit." *Id.* at 255. Indeed, courts have regularly applied *Ex parte Young* to such claims against state university officials. *See, e.g.*, *Mobile Active Def., Inc. v. L.A. Unified Sch. Dist.*, No. 2:15-CV-8762, 2016 WL 7444876, at *3 (C.D. Cal. Apr. 6, 2016) (citing *Pennington Seed, Inc. v. Produce Exch. No 299*, 457 F.3d 1334, 1342 (Fed. Cir. 2006)) ("Under the *Ex parte Young* doctrine, claims to enjoin state officials from violating copyright laws are not barred by the Eleventh Amendment.").[6]

Defendants oppose application of *Ex parte Young* for reasons generally related to their attempt to recast KaZee's pleadings. First, Defendants insist that KaZee cannot allege ongoing

---

[6] *See also InfoMath, Inc. v. Univ. of Ark.*, 633 F. Supp. 2d 674, 681 (E.D. Ark. 2007) (denying state university officials' motion to dismiss asserting immunity against a copyright infringement claim on the basis of *Ex parte Young*); *Rescue Training Assocs., Inc. v. La. State Univ. & Agric. & Mech. Coll.*, No. 05-81146-CIV, 2006 WL 8433702, at *2 (S.D. Fla. Oct. 4, 2006) (same); *Hairston v. N.C. Agr. & Tech. State Univ.*, No. 1:04-CV-1203, 2005 WL 2136923, at *8 (M.D.N.C. Aug. 5, 2005), *report and recommendation adopted*, No. 1:04-CV-1203 (M.D.N.C. Jan. 17, 2006) (Dkt. #31) ("Plaintiff sufficiently alleges an ongoing violation of federal copyright law by Defendants [university officials], and the *Ex Parte Young* doctrine therefore applies to his copyright infringement claim seeking prospective injunctive relief from Defendants."); *Salerno v. City Univ. of N.Y.*, 191 F. Supp. 2d 352, 357 (S.D.N.Y. 2001) ("Plaintiffs in this suit seek a prospective injunction [under the Copyright Act] to prevent a state official from violating federal law, which is precisely the type of relief which the *Ex Parte Young* exception was created to provide.").

violations of federal law until the issue of past breach of contract is adjudicated. Defendants misunderstand the requirements of *Ex parte Young*. To invoke that exception, a party must simply show that the "complaint *alleges* an ongoing violation of federal law." *Va. Office*, 563 U.S. at 255 (emphasis added). KaZee plainly made such allegations in the complaint as to both copyright infringement and misappropriation of trade secrets, and KaZee directed those allegations toward the Defendants as the state officials in charge of UTMB's use of PEARL. Nonetheless, Defendants urge the Court to withhold application of *Ex parte Young* until KaZee has *proved* some of its underlying allegations. The law does not support the additional burden Defendants attempt to impose upon the application of *Ex parte Young*.

Relatedly, Defendants suggest that KaZee attempts to use *Ex parte Young* to obtain retrospective relief for past conduct—the alleged use of PEARL at unauthorized locations—rather than relief against any ongoing violation of federal law. Defendants misread KaZee's pleadings. To be sure, "*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Here, KaZee alleges ongoing infringement of its copyright-protected materials and misappropriation of its trade secrets through UTMB's continued use of PEARL. The illegal action subject to the requested injunction, as alleged, is UTMB's current use of PEARL without the authority bestowed by a license. It is not UTMB's alleged prior use of PEARL at unauthorized locations. The mere fact that adjudication of KaZee's claims may involve interpretation of the Agreement and reference to past conduct does not mean that KaZee's claims do not allege ongoing violation of federal law. Likewise, it does not mean that the injunctive relief that KaZee seeks is effectively a monetary reward for past wrongs. KaZee's complaint makes no request for any

monetary relief whatsoever. It requests an injunction. That KaZee may have made monetary demands for alleged prior unauthorized use of PEARL is irrelevant to this analysis because KaZee makes no such demands in its complaint. For these reasons, *Ex parte Young* applies, and KaZee's claims may proceed against the Defendants.[7]

### III. DEFENDANTS' RULE 12(b)(6) MOTION

Defendants also contend that KaZee fails to allege facts sufficient to state a claim for copyright infringement or for misappropriation of trade secrets. Because KaZee's pleadings provide sufficient allegations, the Defendants' arguments are without merit and their Rule 12(b)(6) motion is DENIED.

**A. Rule 12(b)(6) Legal Standards**

Under the relaxed pleading standards of Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Where a defendant contends that a plaintiff has failed to meet this standard, Rule 12(b)(6) provides a mechanism to challenge the legal sufficiency of a claim early in litigation. To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must plead in its complaint only "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 687, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The

---

[7] Defendants further contend that KaZee's *ultra vires* argument cannot be a basis for avoiding Defendants' sovereign immunity. But KaZee made no such argument, rendering Defendants' *ultra vires* discussion irrelevant.

facts plead are entitled to a presumption of truth and to construction in a light most favorable to the plaintiff, but legal conclusions that lack factual support are not entitled to the same. *Id.* at 678.

To determine whether the plaintiff has plead enough to "nudge[] their claims across the line from conceivable to plausible," a court draws on its own "judicial experience and common sense." *Twombly*, 550 U.S. at 574. This threshold is surpassed when "a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 687 (citing *Twombly*, 550 U.S at 556). Rule 12(b)(6) motions are thus "viewed with disfavor and rarely granted." *Lormand v. US Unwired*, Inc., 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)) (internal quotation marks omitted).

**B. Copyright Infringement**

To prove a copyright infringement claim, a plaintiff must establish "(1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity." *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 549 (5th Cir. 2015) (quoting *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (per curiam) (internal quotation marks omitted)). As to the first element, a "certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). KaZee alleges that "PEARL was registered with the United States Copyright Office in 1990 and given copyright registration number TXU568967," and that it is the owner of that valid copyright. (Dkt. #1 at 5). Defendants do not dispute KaZee's ownership of the copyright or its validity.

The second element inquires into the issue of copying, and the third compares the similarity of the copyrighted material and allegedly infringing material. It is a relatively rare case that

presents direct evidence of copying, so most proceed with circumstantial evidence of access to and substantial similarity with the copyright-protected material. *See, e.g.*, *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 532 (5th Cir. 1994). This, however, is a case that involves direct evidence of copying. It is beyond dispute that KaZee provided UTMB the source code and other copyrighted materials through the Agreement and that UTMB then used those materials to implement PEARL. This is sufficient evidence of direct copying to survive Defendants' Rule 12(b)(6) challenge. *See, e.g.*, *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (finding direct copying where there was evidence of the alleged infringer instructing copying of the copyrighted materials).

Even if UTMB's actions did not constitute direct copying, the same facts clearly show access to PEARL and substantial similarity between the copyrighted materials provided to UTMB under the Agreement and currently being used by UTMB. *See id.* (finding circumstantial evidence of copying under the facts supporting direct copying). Access may be shown "if the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work." *Gen. Universal Sys.*, 379 F.3d at 141 (citing *Ferguson v. Nat'l Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978)). Here, Defendants had—and continue to have—access to the copyrighted PEARL system. Substantial similarity may be shown when the works, "compared as a whole, are adequately similar to establish appropriation." *Id.* (quoting *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 397 (5th Cir. 2001) (internal quotation marks omitted)). While Defendants allege that UTMB has "largely recreated PEARL" to tailor the system to its specific needs, there is no dispute that the underlying system—its fundamental essence and structure—has not substantially changed from the copyrighted PEARL system initially provided to UTMB. For these reasons, KaZee has provided sufficient evidence of copyright infringement to survive Defendants' motion to dismiss.

**C. Federal Misappropriation of Trade Secrets**

A plaintiff may establish a DTSA claim by alleging that it owns a trade secret related to a product used in interstate commerce that was misappropriated. 18 U.S.C. § 1836(b)(1). Under the DTSA, a "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information," that the owner takes reasonable measures to keep confidential and that derive independent economic value from not being generally known by or readily accessible to the public. *Id.* § 1839(3). A trade secret may be misappropriated by a party using it without consent, *id.* § 1839(5), having acquired it through improper means, *id.* § 1839(6).

KaZee has alleged sufficient facts to avoid dismissal of its DTSA claim. KaZee alleges that it created PEARL to be a "cutting-edge medical software application" used by public and private healthcare providers "across the country." (Dkt. #4 at 4–5). PEARL "contains proprietary information, including source code and object code, that is confidential to KaZee." *Id.* at 5. The PEARL system and the proprietary information alleged therein therefore fall squarely within the "scientific, technical" "program devices," "methods," "techniques," "programs," or "codes" contemplated by the DTSA. *See* 18 U.S.C. § 1839(3). KaZee further alleges that the proprietary information is "valuable to KaZee" and "not generally known to KaZee's competitors." (Dkt. #4 at 5). KaZee alleges that it protects such information by "implementing security features to protect the PEARL software and requiring employees and others who access the software to execute confidentiality agreements," just as UTMB did. *Id.* These allegations show sufficient measures to keep KaZee's proprietary information confidential. *See Accresa Health LLC v. Hint Health Inc.*, No. 4:18CV536, 2018 WL 6626551, at *8–9 (E.D. Tex. Nov. 28, 2018), *report and recommendation adopted*, No. 4:18-CV-536, 2018 WL 6617707 (E.D. Tex. Dec. 18, 2018).

KaZee further alleges that Defendants misappropriated its trade secrets through improper use. KaZee contends that, "UTMB, under the direction and supervision of Defendants, continues to use the PEARL software despite that UTMB's license to PEARL was terminated effective December 31, 2018." (Dkt. #1 at 11–12). This provides a sufficient allegation of fact that Defendants are misappropriating KaZee's trade secrets through improper use. *See* 18 U.S.C. § 1839(5). KaZee maintains that this continued use will deprive KaZee of "the ability to control access to its intellectual property" and risk "use and [disclosure of] KaZee's proprietary and confidential information, causing harm to KaZee's reputation and goodwill." (Dkt. #1 at 14). Because the DTSA authorizes injunctive relief "to prevent actual or threatened misappropriation," KaZee has alleged sufficient facts to demonstrate harm.

\*　　\*　　\*

Defendants' Rule 12(b)(6) motion fails because, as to both its copyright-infringement claim and its misappropriation-of-trade-secrets claim, KaZee has alleged facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 687 (citing *Twombly*, 550 U.S at 556).

### IV. CONCLUSION

It is therefore **ORDERED** that Defendants' objections, (Dkt. #38), are **DENIED**. It is further **ORDERED** that Defendants' Motion to Dismiss, (Dkt. #10), is **DENIED**.

**So ORDERED and SIGNED this 2nd day of March, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE