IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KAZEE, INC., | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 4:19-cv-00031-KPJ |
| DR. BEN G. RAIMER, in his official capacity as President Ad Interim of The University of Texas Medical Branch, and TODD LEACH, in his official capacity as Chief Information Officer of the University of Texas Medical Branch, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are:

1. Defendants' Opposed Motion for Leave to File Amended Answer (the "Motion for Leave") (Dkt. 74);

2. Plaintiff's Combined Response in Opposition to Defendants' Motion for Leave to File Amended Answers and Motion to Exclude Defendants' Evidence at Injunction Hearing (the "Motion to Exclude") (Dkt. 79); and

3. Defendants' Emergency Motion to Reconsider Exclusion of Evidence or Alternatively, Reopen Discovery for Purposes of Defending Preliminary Injunction (the "Motion to Reconsider") (Dkt. 112).

The three motions are addressed simultaneously below.

### I. BACKGROUND

On January 15, 2019, KaZee, Inc. ("Plaintiff" or "KaZee") filed a Verified Complaint and Application for Preliminary and Permanent Injunctive Relief (the "Complaint") (Dkt. 1). Plaintiff is a provider of information technology products and services for the healthcare industry, including an electronic health records software known as PEARL. *See* Dkt. 1 at 1. Plaintiff asserts two causes of action against Dr. Ben G. Raimer, in his official capacity as President Ad Interim of The

University of Texas Medical Branch ("UTMB"), and Todd Leach, in his Official Capacity as Chief Information Officer of UTMB (collectively, "Defendants"), related to the ongoing use of Plaintiff's PEARL software by UTMB. Plaintiff alleges copyright infringement pursuant to 17 U.S.C. § 501, and misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. Dkt. 1 at 10–12.

Plaintiff KaZee, Inc. ("Plaintiff" or "KaZee") filed this case and an Application for Preliminary and Permanent Injunction on January 15, 2019. *See* Dkts. 1, 9. Following resolution of discovery disputes and a motion to dismiss, Defendants filed their original answers (the "Answers") in this matter on May 7, 2020. *See* Dkts. 62, 63. Due to difficulties relating to the COVID-19 pandemic, the Court delayed the preliminary injunction hearing to November 17 & 18, 2020. Though the Court's last substantive ruling in this case occurred on March 2, 2020, when the District Court adopted the Report and Recommendation of the undersigned,[1] Defendants filed the present Motion for Leave on September 14, 2020. *See* Dkt. 74.

In the Motion for Leave, Defendants argue they should be allowed to file their Amended Answers (proposed pleadings filed as Dkts. 75 and 76) in order to "clarify and provide further description of their affirmative defenses." Dkt. 74 at 1. The proposed amendments concern details and defenses related to allegations that Plaintiff failed to adequately terminate the Master License Agreement between the parties and/or the license permitting Defendants to use the PEARL software. *See* Dkt. 74. Plaintiff opposes Defendants' request, arguing that Defendants are actually seeking to expand the scope of the preliminary injunction hearing, as well as add a counterclaim, which is "couched" as an affirmative defense. *See* Dkt. 79 at 1. Plaintiff's Motion to Exclude, which also includes its opposition to Defendants' Motion for Leave, requests the Court to exclude

---

[1] The District Court referred the case to the undersigned on March 5, 2020, in accordance with 28 U.S.C. § 636(c), and the consent of the parties. *See* Dkts. 51, 52.

certain information from the preliminary injunction hearing. *See* Dkt. 79. The Court held a hearing, in part, on the Motion for Leave and the Motion to Exclude on October 22, 2020 (the "Hearing"). *See* Dkt. 109. After the Hearing, but prior to the Court's rulings on the Motion for Leave and Motion to Exclude, Defendants filed the Motion to Reconsider. *See* Dkt. 112.

## II.     LEGAL STANDARD

Rule 15(a) instructs the court to "freely give leave when justice so requires." FED. R. CIV. P. 15(a). The rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to allow amendment "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.     ANALYSIS

The motions at issue are herein discussed simultaneously. In the Motion to Exclude, Plaintiff does not independently argue for exclusion. However, in asking the Court to deny Defendants' leave to amend their Answers, Plaintiff essentially extends the request to preclude testimony by Defendants as to a particular issue related to the proposed amendments. *See* Dkt. 79 at 17. Additionally, the Motion to Reconsider is focused on a reconsideration of an anticipated

ruling on the same issues raised in the Motion for Leave and the Motion to Exclude—a ruling that the Court has not yet made. In essence, the Motion to Reconsider is merely extended briefing on the issues raised in the Motion for Leave and the Motion to Exclude. The Court will, thus, address Defendants' request for leave to amend their Answers and Plaintiff's request for an order precluding testimony.

### A. Leave to Amend

In their briefing, the parties only discuss three of the five Rule 15 factors: undue delay, undue prejudice, and futility. The Court notes there is no evidence of bad faith or dilatory motive, and there has not been a repeated failure to cure deficiencies by previous amendments. Regarding futility, Plaintiff does not assert a substantive argument, and merely argues Defendants' previous refusal to provide testimony related to termination of the Master License Agreement establishes that the defense is futile. The Court finds no support for the argument that the proposed amendments would be futile.

1. Undue Delay

The parties disagree as to whether Defendants unduly delayed their filing for leave to amend. First, Defendants intentionally did not plead affirmative defenses related to Plaintiff's termination of the Master License Agreement, noting that doing so would waive their purported immunity for purposes of those claims. *See* Dkt. 79-1 at 4. The Court, in a previous hearing regarding Defendants' Motion to Dismiss, held on November 14, 2019, specifically asked Defendants' counsel, should their request for dismissal be denied, could Defendants assert a counterclaim for breach of the Master License Agreement in this suit. *See id.* at 5. Defendants replied in the affirmative but further stated they would have to "think that through" because of

4

related immunity issues. *See id*. Thus, Defendants were certainly aware almost a year ago of their need to address Plaintiff's termination of the Master License Agreement.

Notably, Defendants have chosen not to assert a counterclaim of breach of contract, and instead, have asserted issues related to termination of the Master License Agreement as affirmative defenses. Defendants' statements about possibly claiming breach of the Master License Agreement, however pled, evidences a full awareness of issues related to termination of the Master License Agreement in November of 2019. Yet, even after the District Court ruled on the issue of dismissal, finding Defendants lacked immunity from suit, on March 2, 2020, Defendants waited nearly six months (September 14, 2020) to bring the present Motion for Leave before the Court.

The Court notes that the COVID-19 pandemic has led to a number of delays in this case. However, given that the issues presented in the Motion for Leave were known and even contemplated by Defendants in November of 2019—well before Defendants filed their Answers on May 7, 2020—the Court finds Defendants have demonstrated undue delay in bringing the request for leave to amend.

### 2. Undue Prejudice

There are two issues related to undue prejudice. First, delay with regard to the overall case, and second, delay with regard to the preliminary injunction hearing. First, with regard to the case beyond the preliminary injunction hearing, the parties do not substantively argue that there is significant prejudice in allowing the proposed amendments. Rather, Plaintiff's Motion to Exclude almost exclusively focuses on the potential "11th Hour" prejudice that the amendments could have on, specifically, the preliminary injunction hearing. *See* Dkt. 79 at 12.

Notwithstanding the injunction hearing, the case is still in its beginning stages. There has been a single motion to dismiss, no amendments to the pleadings, and very limited discovery

beyond that related to the preliminary injunction hearing. Therefore, the Court finds there is little, if any, prejudice at issue for allowing amendment of Defendants' Answers outside of the preliminary injunction context.

With regard to the preliminary injunction hearing, allowing the amendments at this late hour would substantially prejudice Plaintiff. Importantly, the parties have been "permitted to engage in expedited discovery limited to the issues relevant to Plaintiff's Application for Preliminary Injunction and any of Defendants' defenses responsive to the Application." Dkt. 70. That limited discovery period is now closed and the briefing related to Plaintiff's preliminary injunction request is due in one week. In their Answers, Defendants: "denie[d] that the Master License Agreement was effectively terminated by KaZee;" "denie[d] . . . that there is no license permitting UTMB's current use of PEARL;" and "denie[d] that KaZee formally terminated UTMB's perpetual license to use PEARL." Dkt. 62 at 2 ¶ 5, 3 ¶ 6, 5 ¶ 25; Dkt. 63 at 2 ¶ 5, 3 ¶ 6, 5 ¶ 25. Defendants did not, however, plead a factual basis to support their general denials.

Moreover, Plaintiff previously deposed UTMB's corporate representative and asked about Defendants' general denial that the Master License Agreement was terminated; the representative could not testify about the factual basis of Defendants' position. *See* Dkt. 79-2 at 12; 269:7–10 ("Q. Okay. You cannot share with me -- you cannot testify as to why you believe the termination notice from KaZee was invalid; is that fair? A. That's fair."). Plaintiff asked the corporate representative about the basis of Defendants' position on this issue multiple times, yet he was either not prepared or unwilling to testify on the issue. *See* Dkt. 79-2 at 6–7; 105:24–112:25. Additionally, Plaintiff deposed Defendant Raimer and asked similar questions multiple times, and Raimer also did not provide information supporting Defendants' contention that termination of the Master License Agreement was invalid. *See* Dkt. 79-3 at 4; 58:18–23 ("Q. Yeah, so I'm asking you

to tell me UTMB's reasons for why KaZee's Notice of Termination of the PEARL license is not effective? A. At this time, I couldn't tell you that because I don't know all the reasons. I have not discussed that with the entire team."); *see also* Dkt. 79-3 at 5–6; 60:3–62:9 (same).

Thus, to the extent Defendants seek to amend their Answers to include allegations regarding the factual basis for Defendants' position that Plaintiff inadequately terminated the Master License Agreement and/or license permitting the use of the PEARL software, Plaintiff has not been able to conduct discovery on this central issue. Additionally, Plaintiff has not been able to take discovery on entirely new affirmative defenses asserted in the proposed amendments—that of ratification and estoppel. *See* Dkt 74 at 2.

The Court, thus, finds that Plaintiff would experience significant prejudice by allowing the proposed amendments to affect the scope of the preliminary injunction hearing. Allowing the amendments would necessitate additional delays, including additional discovery and briefing, as well as postponement of the preliminary injunction hearing, which has been delayed a number of times and is currently specially set before the Court.

Considering all of the Rule 15 factors, the Court finds that the Motion for Leave should be **GRANTED IN PART and DENIED IN PART**. Weighing Defendants' delay and the potential for prejudice, Defendants are granted leave to amend their Answers for purposes of the overall case. However, the parties will rely on Defendants' Answers for purposes of the preliminary injunction hearing. The Court will not expand the scope of the preliminary injunction hearing to include Defendants' Amended Answers.

### B. Request to Exclude

In their Motion to Exclude, Plaintiff requests that Defendants' testimony and arguments regarding termination of the Master License Agreement be disallowed at the preliminary

7

injunction hearing. *See* Dkt. 79 at 15. Plaintiff's arguments are tied to its assertion of undue delay and undue prejudice, highlighting the standards articulated under Federal Rule of Civil Procedure 30(b)(6). *See id*.

"When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject." *Function Media, L.L.C. v. Google, Inc.*, No. 2:07-CV-279-CE, 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010) (citing *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, No. 3:06-CV-271-B, 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007) ("Federal courts have interpreted [Rule 30(b)(6)] as prohibiting a 30(b)(6) representative from disclaiming the corporation's knowledge of a subject at the deposition and later introducing evidence on that subject."); *Ierardi v. Lorillard, Inc.*, No. 90-7049, 1991 WL 158911, at *3 (E.D. Pa. Aug. 13, 1991) ("Under Rule 30(b)(6), [the organization] has an obligation to prepare its designee to be able to give binding answers on behalf of [the organization]. If the designee testifies that [the organization] does not know the answer to [deposing attorney]'s questions, [the organization] will not be allowed to effectively change its answer by introducing evidence during trial. The very purpose of discovery is to avoid trial by ambush.")).

Here, UTMB's corporate representative refused to testify, with facts, to support Defendants' assertion. Specifically, the representative offered no meaningful testimony to substantiate Defendants' allegations that Plaintiff did not terminate the Master License Agreement and/or license permitting the use of the PEARL software. Defendants argue the Court cannot have a meaningful hearing if it precludes evidence regarding the validity of Plaintiff's contended termination of the Master License Agreement. *See* Dkt. 112 at 3. The case is stuck between a need to take up an issue raised in Defendants' Answers, that is, the termination of the Master License

Agreement and/or license permitting the use of the PEARL software, and the fact that Defendants' 30(b)(6) corporate representative, as well as Defendant Raimer, refused to substantively testify regarding Defendants' positions.

The parties blame each other for this complication. Defendants allege that Plaintiff did not ask "with reasonable particularity" for the "factual basis" regarding why UTMB alleges the Notice of Termination is ineffective or about any of UTMB's affirmative defenses. *See* Dkt. 112 at 11. Plaintiff's listed topic on the issue is: "The Notice of Termination from KaZee dated November 1, 2018." Dkt. 112-13 at 4. While the description is sparse, the Court finds it unreasonable for Defendants to conclude that this topic would merely concern Defendants' legal position regarding the Notice of Termination. Defendants' general positions—denial that the Notice of Termination is valid, denial that there is no license permitting the use of PEARL, and denial that Plaintiff formally terminated the perpetual license—are set forth in their Answers. What is absent from the Answers, and therefore almost certainly the desired focus of a request for testimony, is any basis for such denials. Even if Plaintiff's description is not perfectly specific, it is fundamentally unfair, as reflected in the case law set forth above, to claim ignorance of a topic in depositions and then present evidence on that same topic during the preliminary injunction hearing.

The Court, thus, strikes a balance to allow for a meaningful hearing on both the substance of the requested injunctive relief and the defenses against such requested relief, and the need to engage in meaningful discovery on the issue of termination of the Master License Agreement and/or license permitting the use of the PEARL software. The Court will not issue an order preemptively excluding testimony or evidence, particularly in light of the fact that Defendants did disclose a challenge to the termination of the Master License Agreement and/or license permitting the use of the PEARL software in their Answers. However, the Court will allow Plaintiff to retake

the deposition of Defendants' corporate representative before the preliminary injunction hearing.[2] The Court declines to specify topics for such deposition other than what is identified herein as having been pled in Defendants' Answers:

- Defendants "deni[al] that the Master License Agreement was effectively terminated by KaZee;"

- Defendants "deni[al] . . . that there is no license permitting UTMB's current use of PEARL;" and

- Defendants "deni[al] that KaZee formally terminated UTMB's perpetual license to use PEARL."

Dkt. 62 at 2 ¶ 5, 3 ¶ 6, 5 ¶ 25; Dkt. 63 at 2 ¶ 5, 3 ¶ 6, 5 ¶ 25. Plaintiff may seek discovery on such topics at the deposition. The Court cautions Defendants that to the extent their corporate representative is unprepared to answer questions surrounding these general topics, particularly, the alleged basis for Defendants' position that Plaintiff did not terminate the Master License Agreement and/or license permitting the use of the PEARL software, Defendants will be barred from offering any evidence on such topics at the preliminary injunction hearing. Further, to the extent a dispute arises as to the scope of the deposition, the parties are ordered to immediately contact the Court's chambers; the Court will make itself available and will promptly resolve any such dispute.

### IV. CONCLUSION

Based on the foregoing, the Court finds:

Defendants' Opposed Motion for Leave to File Amended Answer (Dkt. 74) is **GRANTED IN PART and DENIED IN PART**. The Court grants Defendants leave to file the proposed

---

[2] Upon discussion with the parties, such deposition is scheduled to take place on November 3, 2020.

Amended Answers after the preliminary injunction hearing; however, the original Answers shall remain the live pleadings for purposes of the preliminary injunction hearing;

Plaintiff's Combined Response in Opposition to Defendants' Motion for Leave to File Amended Answers and Motion to Exclude Defendants' Evidence at Injunction Hearing (Dkt. 79) is **DENIED**.

Defendants' Emergency Motion to Reconsider Exclusion of Evidence or Alternatively, Reopen Discovery for Purposes of Defending Preliminary Injunction (Dkt. 112) is **DENIED**.

Defendants are **ORDERED** to accommodate an additional deposition of Defendants' corporate representative on or before November 3, 2020, on the following topics as set forth in Defendants Answers:

- Defendants denial that the Master License Agreement was effectively terminated by KaZee;

- Defendants denial that there is no license permitting UTMB's current use of PEARL; and

- Defendants denial that KaZee formally terminated UTMB's perpetual license to use PEARL.

  So **ORDERED** and **SIGNED** this 30th day of October, 2020.

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE