IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KAZEE, INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00031-KPJ |
| | § | |
| DR. DAVID L. CALLENDER, in his | § | |
| official capacity as President of the | § | |
| University of Texas Medical Branch, | § | |
| and TODD LEACH, in his official | § | |
| capacity as Chief Information Officer of | § | |
| the University of Texas Medical Branch, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Exclude and Objection to Extrinsic Evidence Concerning Master License and Request for Expedited Relief Prior to Preliminary Injunction Hearing (the "Motion") (Dkt. 129). Plaintiff filed a response to the Motion (Dkt. 131), and Defendants filed a reply (Dkt. 136).

### I.    BACKGROUND

On January 15, 2019, KaZee, Inc. ("Plaintiff," or "KaZee") filed a Verified Complaint and Application for Preliminary and Permanent Injunctive Relief (the "Complaint") (Dkt. 1). Plaintiff is a provider of information technology products and services for the healthcare industry, including an electronic health records software known as PEARL. *See* Dkt. 1 at 1. In August 1999, Plaintiff entered into a Master License with the University of Texas Medical Branch ("UTMB") to use PEARL (the "Master License Agreement") (Dkt. 131-2). *See id.* Plaintiff asserts two causes of action against Dr. Ben G. Raimer, in his official capacity as President Ad Interim of UTMB, and Todd Leach, in his Official Capacity as Chief Information Officer of UTMB (collectively,

"Defendants"), related to the ongoing use of Plaintiff's PEARL software by UTMB. Plaintiff

alleges copyright infringement pursuant to 17 U.S.C. § 501, and misappropriation of trade secrets

under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. *See* Dkt. 1 at 10–12.

## II.    ANALYSIS

Plaintiff's Motion for Preliminary Injunction (Dkt. 121) is set for a two-day hearing on

December 14 and 15, 2020 (the "Hearing"). In the present Motion, Defendants argue the Court

should exclude from the Hearing "all written and oral communications related to the parties'

understanding of the Master License under Section 24.1 of the Master License and applicable

Texas Law relating to contract construction." Dkt. 129 at 1. Defendants contend the Master

License Agreement is unambiguous and, therefore, the Court should bar extrinsic evidence

regarding the parties' understanding of the terms of the Master License Agreement. *See* Dkt. 129

at 1. Notably, in their Motion, Defendants request a broad, exclusionary ruling; however, in their

reply, Defendants appear to narrow the relief sought, asking the Court to only exclude extrinsic

evidence if such evidence interprets the scope of the Master License. *See* Dkt. 136 at 5–6.

Defendants concede extrinsic evidence may be offered at the Hearing for other purposes. *See id.*

Plaintiff argues the Motion should be denied for three reasons: (1) there is no disagreement

regarding the scope of the Master License Agreement before the Court; (2) extrinsic evidence is

relevant to the extent the Master License Agreement is ambiguous; and (3) certain subsequent

agreements have become part of the Master License Agreement and/or clarify its scope and should

be offered during the Hearing.[1] *See* Dkt. 131 at 2–7.

---

[1] Plaintiff also argues the evidence is relevant to Defendants' affirmative defenses. *See* Dkt. 131 at 8. As previously noted, Defendants concede that Plaintiff may offer such extrinsic evidence for other purposes and have narrowed their request to exclude extrinsic evidence for the specific purpose of interpreting the Master License. *See* Dkt. 136 at 5–6.

### A.  Whether the Scope of the Master License Agreement is Before the Court

Plaintiff argues the Hearing's scope does not encompass Defendants' allegation that Plaintiff inadequately terminated the Master License Agreement. *See* Dkt. 131 at 2–3. Defendants disagree, arguing Plaintiff's prima facie case requires Plaintiff to prove it terminated the Master License Agreement lawfully and effectively. *See* Dkt. 136 at 2. Defendants further argue that several of their affirmative defenses necessitate evaluating the Master License Agreement. *See id.* Defendants request the Court determine the scope of the Master License Agreement as a matter of law. *See* Dkt. 136 at 2.

The Court has already ruled that Plaintiff's prima facie case does not require interpretation of any contract and is not inclined to allow reopening of the issue. *See* Dkt. 37 at 5. Hence, the issue remaining is whether Defendants' affirmative defenses require interpretation of the Master License Agreement's scope. Defendants assert, as one of several defenses, a defense of laches. *See* Dkt. 62 at 8; Dkt. 63 at 8. A defense of laches requires a showing that: (1) the plaintiff delayed in asserting the rights at issue; (2) the delay was inexcusable; and (3) the defendants have suffered undue prejudice because of the delay. *See Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251, 256 (5th Cir. 2016). Importantly, for the present discussion, Defendants assert Plaintiff knew of UTMB's use of PEARL in the Federal Bureau of Prisons and county jails "long before 2015." Dkt. 123 at 13. For purposes of this affirmative defense, Defendants contend that if such use exceeded the scope of the Master License Agreement, Plaintiff inexcusably delayed in asserting its rights, thereby unduly prejudicing Defendants. *See* Dkt. 123 at 13.

The Court agrees with Defendants. Affirmative defenses are relevant to consider during a hearing for a potential preliminary injunction. In the Fifth Circuit, there are four prerequisites for obtaining the extraordinary relief of a temporary restraining order ("TRO") and/or a preliminary

injunction. To prevail, the applicant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the Defendant; and (4) that the injunction will not disserve the public interest. *See Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). Plaintiff bears the burden to prove all four requirements in order to be entitled to injunctive relief. *Palmer*, 579 F.3d at 506. The denial of a TRO or preliminary injunction will be upheld where the movant has failed to sufficiently establish any one of the four criteria. *Black Fire Fighters Ass'n v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990). If Plaintiff demonstrates it is likely to succeed on its prima facie case, Defendants may refute that Plaintiff is likely to succeed by showing they are likely to succeed on an affirmative defense. *See Janvey v. Alguire*, No. 3:09-CV-724-N, 2010 WL 11619267, at *6 (N.D. Tex. June 10, 2010).

The Court finds Defendants' affirmative defenses, as pled, implicate the Master License Agreement such that interpretation of its scope is relevant for purposes of the Hearing. Specifically, the Court may consider the alleged time frame Plaintiff became aware of Defendants' use of PEARL allegedly exceeding the scope of the Master License. The scope of the Master License Agreement is, therefore, before the Court and not a moot issue.

B.  **Ambiguity of the Scope of the Master License**

Though Defendants argue the scope of the Master License Agreement is unambiguous, they assert in their pleadings that the scope of the Master License Agreement is ambiguous. *See* Dkts. 62 at 2, 8; 63 at 2, 8. Defendants now contend they pled such argument on an alternative basis. *See* Dkt. 136 at 5. Defendants concede extrinsic evidence may become relevant if the Court

4

finds the Master License Agreement is ambiguous. *See id.* at 5 ("In asking the Court to exclude extrinsic evidence, Defendants recognize that if the Court were to find the Master License ambiguous, then extrinsic evidence will come into play."). Defendants argue, however, there is no basis to admit extrinsic evidence unless the Court finds the Master License Agreement is ambiguous. *See id.*

Both parties contend the Master License Agreement is unambiguous, yet they offer distinctly different interpretations of the scope of the Master License Agreement. *See* Dkt. 136 at 4. In order to fully address the issues, the Court will not preemptively and broadly exclude extrinsic evidence related to interpreting the scope of the Master License Agreement. Doing so could prevent the Court from adequately considering all of the possibilities presented before it. It could be that the Master License Agreement is unambiguous. In that case, the Court will hear arguments from both parties as to their interpretations and may not need to consider extrinsic evidence. If the Court finds the Master License Agreement is ambiguous, then the Court will certainly consider extrinsic evidence. Because the Court strives to make a fully informed decision, excluding a broad swathe of evidence from being presented at the Hearing would be imprudent and frustrate this goal.

### C. **The License Agreements**

Plaintiff contends two License Extension Agreements between UTMB and Plaintiff can be used to interpret the Master License Agreement because they are part of the Master License Agreement—not parol evidence. *See* Dkt. 131 at 4. Plaintiff references a provision in the Master License Agreement, which states the agreement "may be amended, modified or supplemented only by a writing signed by the parties to this Agreement. Such amendments, modifications or

supplements shall be deemed as much a part of this Agreement as if so incorporated herein." Dkt. 131-2 at 4 (Master License § 23.1).

Defendants do not directly address Plaintiff's contention; rather, Defendants broadly argue extrinsic evidence should not be used to interpret the Master License Agreement. *See* Dkt. 136 at 3–4. Defendants cite *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 730 (Tex. 1981), in support of their argument. In *Sun*, however, the Texas Supreme Court did not address whether to consider *additions* to an agreement. In fact, the Texas Supreme Court merely considered (and rejected) a party's construction of an amendment to the lease. *See id.* at 733 ("We also reject lessors' construction of the 1935 amendment to the lease. This amendment was not intended to enlarge lessors' participation in working interest gas. Lessors' contention is that the amendment simply confirms Sun's obligation to account to them for working interest gas and does not in itself create lessors' right to working interest gas. The amendment cannot confirm an obligation which is not otherwise expressed in the lease."). Thus, *Sun* does not prohibit the consideration of an amendment, modification, or supplement to an agreement.

Moreover, the parol evidence rule "does not apply to agreements made subsequent to the written agreement." *First Bank v. Brumitt*, 519 S.W.3d 95, 111 (Tex. 2017) (citing *Lakeway Co. v. Leon Howard, Inc.*, 585 S.W.2d 660, 662 (Tex. 1979)). As subsequent agreements to the Master License Agreement, the License Extension Agreements are not inadmissible parol evidence. Defendants have, thus, failed to support a basis for excluding the License Extension Agreements. At this juncture, the Court finds excluding these documents from the Hearing inappropriate.

### III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude and Objection to Extrinsic Evidence Concerning Master License and Request for Expedited Relief Prior to Preliminary Injunction Hearing (Dkt. 129) is **DENIED**.

**So ORDERED and SIGNED this 2nd day of December, 2020.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE